GUIDRY, J.,
dissents and assigns reasons.
hi respectfully dissent from the majority’s decision today. As I understand the funding mechanism for public school districts as set up in the Minimum Foundation Program (“MFP”), Level 1 of the MFP formula, entitled “Cost Determination and Equitable Distribution of State and Local Funds,” is the amount that the Board of Elementary and Secondary Education (“BESE”) has determined to be the “Base Per Pupil Amount” to fund public education in Louisiana. Level 2 and Level 3 of the MFP formula are essentially incentives or emoluments to be Ugiven to some eligible school districts, but not guaranteed to each and every district, and are thus above and beyond the Base Per Pupil Amount in Level 1. The total amount under Level 1 to be appropriated and then allocated to the local school districts, consequently, turns on the number of students in their systems on certain dates of the year. These numbers obviously will change as students move into the district, move out of state, or matriculate to nonpublic schools.
The majority overlooks the fact that, once a student leaves a district, the district is no longer entitled to the state’s share of the MFP for that student, and thus the district’s state share of the MFP is removed from the MFP allocation to that district. Furthermore, there is no indication the state’s share for that student, who is no longer in a public school system, is reallocated within the MFP to other school districts, because Level 1 of the MFP has already been set by BESE and the Base Per Pupil Amount does not appear to rise or fall simply because there may be fewer students in a particular district.
In short then, the state’s share of Level 1 of the MFP for a student no longer within the state public school system presumably reverts back to the control of the state. I see no constitutional limitation in Art. VIII, Sect. 13(B), that would preclude the state from then using those funds no longer dedicated to funding its share of Level 1 of the MFP to fund scholarships for eligible public school students who have been accepted to eligible non-public schools elsewhere within the MFP. There has been no showing that the district’s allocation of MFP funds from the state is unconstitutionally diverted to a non-public school when the district is not entitled to that share for a student not attending a public school within its district. Finally, that the MFP can contain so called line items within it, which would necessarily be how the Course Choice Program and the Student Scholarships for Educational Excellence Program appear within the MFP, is evidenced by the fact that there are schools, such as the New Orleans Center for the Creative Arts, which |sare allocated money directly from the MFP because they do not fall within a district. In sum, there is no showing by clear and convincing evidence that the parish and city school systems do not receive equitable allocations of the MFP, as required by the constitution, under ACT 2 and SCR 99.
I also dissent from the majority’s conclusion that SCR 99 was a matter intended to have the effect of law. I agree with the district court’s reasoning in this regard, and would find that SCR 99 did not violate the constitution’s procedural requirements for adoption.
Notwithstanding my dissent from the majority’s decision today, I do not read that decision as proposing to foreclose the State of Louisiana and the Louisiana Leg *1073 islature from establishing educational excellence programs involving non-public schools that are funded outside the constitutional limitations of the Minimum Foundation Program. Indeed, when it was initially created, the Student Scholarships for Educational Excellence Program in Chapter 43 of Title 17 of the Louisiana Revised Statutes, now designated as Part I of Chapter 43, was funded by an appropriation from the state’s general fund. See former La.Rev.Stat. 17:4016(D) (as enacted by Acts 2008, No. 509, Sect. 1, eff. June 25, 2008) (“Funding for scholarships awarded to parents or other legal guardians of eligible students pursuant to this Chapter shall be provided by an appropriation from the legislature from the state general fund.”). For 2008-2009, the total amount of state funds expended to implement the program was capped at $10 million. See former La.Rev.Stat. 17:4016(E) (as enacted by Acts 2008, No. 509, Sect. 1, eff. June 25, 2008). This method of funding the Student Scholarships for Educational Excellence Program was in place until the enactment of Act No. 2 and SCR 99 of 2012.